423 S.E.2d 600

**William David LIEVING, Executor of the Will and Testament of Roberta Lavaughn Lieving; and William David Lieving, Individually, Appellees,**

v.

**Thelma E. HADLEY, Union Bank of Tyler County, a Corporation; and First National Bank of St. Mary's, N.A., Defendants Below,**

**Union Bank of Tyler County, a Corporation, Appellant.**

**No. 20738.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 1992.

Decided Oct. 22, 1992.

---

Beryl A. Cunningham, Parkersburg, for appellees.

Philip B. Hill, Logan Hassig, Snyder & Hassig, New Martinsville, for appellant, Union Bank of Tyler County.

Keith White, for defendant, First Nat. Bank of St. Mary's.

NEELY, Justice:

This is an unfortunate case of estate planning gone awry, which has caused much grief among the family of the late Roberta Lieving. There are complicated questions of fact that can only be resolved by a full factual inquiry, so we reverse the summary judgment granted by the Circuit Court of Wood County and remand for a trial on the merits.

I.

Before 1 January 1984, the Tyler County Bank had registered and issued its stock certificate A–102 for two hundred shares of its common stock as follows: "Thelma E. Hadley and Donna Jean Tice and Roberta Lieving as joint tenants with right of survivorship." On 1 January 1984, Tyler County Bank merged with another bank and became the Union Bank of Tyler County. As part of the merger, the Bank recalled all outstanding stock certificates in order to issue new ones with the Union Bank's name. The by-laws of the Union Bank provided that certificates would not be issued for more than 100 shares.

Thelma E. Hadley is the mother of Donna Jean Tice and Roberta Lieving. Ms. Hadley delivered certificate A–102 to the Bank on or about January 1, and in return the Bank issued two certificates worth 100 shares each. The Bank issued certificate B–136 to "Thelma E. Hadley and Donna Jean Tice" and certificate B–137 to "Thelma E. Hadley and Roberta Lieving".[1] There is no mention of a joint tenancy with right or survivorship on the face of either of those two certificates. Ms. Hadley received the documents without comment. There is no clear reason for the change in registration: the Bank says it made a mistake and Mr. Lieving says it was an intentional change on the part of the joint tenants.

Sometime before Roberta Lieving's death, Ms. Hadley apparently gave Ms. Lieving physical possession of the stock certificates. The reason for this is unclear. Ms. Lieving died with the certificates still

---

1. In its own ledger, the bank has the following entries:
"1 1 84 Conversion UBTC Donna J. Tice B 136 100 shares";

"1 1 84 Conversion UBTC Roberta Lieving B 136 100 shares";

in her possession on 24 April 1987. Mr. Lieving, as executor of his wife's estate, went to the Bank and inquired as to the status of the stock. The president of the Bank told him that the stock was still registered in the name of Roberta L. Lieving. Shortly thereafter, Ms. Hadley filed a written statement with the Bank claiming that stock certificate B–137 had been lost, stolen or misplaced. The Bank then issued stock certificate B–306 in the names of Thelma E. Hadley, Donna Jean Tice and Roberta L. Lieving, joint tenants with rights of survivorship as a "re-issue" of certificate B–137.

On 16 March 1988, Mr. Lieving requested information about how to have the shares transferred to him. The president of the Bank informed him that the shares had been reissued to other persons, and, therefore, he would not transfer them to Mr. Lieving. The next day, the president of the Bank personally transferred the stock represented by certificate number B–306 at the behest of Ms. Hadley a third party and issued a new certificate in the name of that third party.

The Circuit Court of Wood County granted Mr. Lieving's motion for summary judgment, declaring that he was, as a matter of law, entitled to 50 shares of Bank stock. The Bank filed and served a motion to reconsider with the Circuit Court on 7 May 1990, before the initial ruling was memorialized in a court order, signed and entered.[2] The motion to reconsider was denied on 30 July 1991. On 26 August 1991 the petition to this Court was filed. We denied that first petition, and under Rule 7 of the *West Virginia Rules of Appellate Procedure.* The Bank renewed its petition on 1 November 1991, and on that occasion we granted an appeal.

## II.

Mr. Lieving raises the issue of whether the Bank's appeal is properly before this Court. The crux of the question is the effect that the filing of a motion to reconsider has on the time for appeal. For some time, lawyers have filed "motions for reconsideration" with the circuit courts after those courts have made their initial rulings but before appeals to this Court. However, we have not previously stated clearly what the rules for dealing with this type of motion are, nor how such motions affect the time for appeal. This ambiguity has occasionally led to problems, such as in this case, when a lawyer has filed a "motion for reconsideration" and then waited until the circuit court ruled on that motion before filing an appeal. If the circuit court took more than four months to rule on such a motion, then the time for appeal could arguably expire before the circuit court ruled on the motion to reconsider.

■ To prevent this oddity from occurring, Rule 59(e) of the *West Virginia Rules of Civil Procedure* allows for a motion "to alter or amend a judgment." Under the Federal Rules of Civil Procedure, motions to reconsider are routinely considered Rule 59(e) motions:

> In order to avoid confusion, and to prevent harsh results for unwary parties, the courts have generally held that, regardless of its label, any motion made within ten days of entry of judgment will be considered a Rule 59(e) motion which suspends the finality of judgment and tolls the time of appeal. Thus, *a motion to reconsider, vacate, set aside, or reargue will ordinarily be construed as Rule 59(e) motions if made within ten days of entry of judgment.*

*Moore's Federal Practice,* page 59–265, Paragraph 59.12[1], (June 1989). Rule 59(e) respects the right of both parties to a full and fair hearing as well as the right to finality. A party will know within ten days whether the appeal period is tolled by a rule 59(e) motion.[3] There is sound reason-

---

**2.** The original judgment was entered on 26 April 1991.

**3.** Rule 72 of the *West Virginia Rules of Civil Procedure* states:

> The full time for filing a petition for appeal commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: Granting or denying a motion for judgment under Rule 50(b); or granting or denying a

ing behind this approach under the *Federal Rules of Civil Procedure*, and we hereby hold that a motion to reconsider, vacate, set aside, or reargue shall be construed as a Rule 59(e) motion if made (and served) within ten days of entry of judgment.

■ However, when making a Rule 59(e) motion it is very important plainly to call that motion a "Rule 59(e) motion to alter or amend judgment." It is very confusing both to a trial court and to opposing counsel to make motions that do not clearly fall within the ambit of a particular rule. Furthermore, it allows opposing counsel to make motions to dismiss appeals in this Court for lack of timeliness, when such motions would not be invited were they properly styled as a "Rule 59(e) motion to alter or amend judgment."

■ In *Rowan v. McKnight*, 184 W.Va. 763, 764, n. 2, 403 S.E.2d 780, 781, n. 2 (1991) (per curiam), we noted in *obiter dicta* that motions to reconsider do not ordinarily toll the period for appeal. That decision was rendered on the basis of a Rule 60(b) motion which *does not* toll the time for appeal. If a motion to reconsider is filed and served within ten days of the entry of judgment then that motion is a Rule 59(e) motion, and therefore tolls the period for appeal. If the motion to reconsider is not filed or served within ten days, then it shall be considered a Rule 60(b) motion and the time for appeal runs from the entry of judgment in the case. Any inference that *Rowan v. McKnight* somehow alters the standard interpretation of Rule 59(e) is incorrect.[4]

In this case, the motion to reconsider was filed and served on 7 May 1990. This was before the judgment was even entered on 26 April 1991; ergo, the motion was a Rule 59(e) motion and the time for appeal was tolled under Rule 72 until the motion to reconsider was denied on 30 July 1991. The four-month period then commenced, and on 26 August 1991 the petition to this Court was filed. We denied that first petition, and under Rule 7 of the *West Virginia Rules of Appellate Procedure* the Bank renewed its petition on 1 November 1991, which was within both the thirty-day renewal notice period of Rule 7(b) of the *West Virginia Rules of Appellate Procedure* and the four-month period following the denial of the motion to reconsider. Therefore, this appeal is properly before this Court.

### III.

Traditionally, the view of this Court was that "[a] certificate of stock is not the stock itself, but is evidence of its existence of ownership." Syllabus Point 5, *Lipscomb v. Condon*, 56 W.Va. 416, 49 S.E. 392 (1904). However, in adopting the *Uniform Commercial Code*[5], the West Virginia Legislature sought to increase the marketability of stocks and securities by allowing a special type of party to rely on the security itself: the *bona fide* purchaser. Thus, there is a big difference between an ordinary purchaser and a *bona fide* purchaser.

■ Under *W. Va. Code* § 46–8–301 [1979], a transfer to a purchaser gives the purchaser all the rights the transferor has actual authority to convey. But under *W. Va. Code* § 46–8–302(3) [1979], a *bona fide* purchaser, in addition to acquiring the

---

motion under rule 52(b) to amend or make additional findings of fact whether or not an alteration of the judgment would be required if the motion were granted; or *granting or denying a motion under Rule 59 to alter or amend the judgment;* or granting or denying a motion for a new trial under Rule 59. [Emphasis added]

**4.** It is important to point out this Court's traditional approach to *per curiam* opinions. *Per curiam* opinions, such as *Rowan*, are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta*. A *per*

*curiam* opinion that appears to deviate from generally accepted rules of law is not binding on the circuit courts, and should be relied upon only with great caution. Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.

**5.** Chapter 46 of the *West Virginia Code*.

rights of a purchaser, also acquires his interest free from any adverse claim of which the *bona fide* purchaser was ignorant. A *bona fide* purchaser is defined in W.Va.Code § 46–8–302(1) [1979] as a purchaser for value in good faith and without notice of any adverse claim who takes delivery of a certificated security in bearer form or in registered form, issued or indorsed to him or in blank. One who takes by inheritance is not a *bona fide* purchaser for value; neither is the recipient of a gift. Accordingly, neither Mr. Lieving in his inheritance, nor the late Ms. Lieving, herself, was entitled to the protection that a *bona fide* purchaser would receive from the *Uniform Commercial Code*.

■ Without such protection, we must look to other law to determine whether Ms. Lieving's interest was that of a joint tenant with right of survivorship or a tenant in common. *W.Va.Code*, 36–1–19 [1923] and 36–1–20 [1981] articulate a strong statutory presumption in favor of tenancies in common.[6] However, the statute grants us the discretion not to exalt form over substance; for if it is clear that survivorship was intended, then that is the arrangement to which we should give effect. *Carter v. Carter*, 87 W.Va. 254, 104 S.E. 558 (1920). Although it is true that the presumption of a tenancy in common must be overcome by clear and convincing evidence, the exact intent of the parties is a material fact that was not determined appropriately below.[7]

■ When material facts are in controversy, summary judgment is not appropriate:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

Syl. Pt. 3, *Aetna Casualty and Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).[8]

## IV.

For the foregoing reasons, the judgment of the Circuit Court of Wood County is

---

**6.** We recognize that the law defining the survivorship principles of joint tenancies, tenancies by the entirety and tenants in common are very old. At common law, when two (or more) people owned a piece of property in both of their names and all four unities existed (time, title, interest and possession), then they held as joint tenants with a right of survivorship. This often created traps for the unwary and forced many to go through straw transactions in order either to create or break the unities. The legislature wanted to create a scheme based on the intent of the parties as opposed to the common law unities. *See Herring v. Carroll*, 171 W.Va. 516, 300 S.E.2d 629 (1983). First, the legislature "outlawed" joint tenancies by abolishing the common law rules in *W.Va.Code* 36–1–19 [1923]:

> When any joint tenant or tenant by the entireties of an interest in real or personal property ... shall die, his share shall descent [sic] or be disposed of as if he had been a tenant in common.

However, *W.Va.Code* 36–1–20 [1981] both modifies and probably makes manifest the original legislative intent of *W.Va.Code* 36–1–19 [1923] by creating an exception that nearly swallows the *Code* 36–1–19 rule by allowing for joint tenancies with rights of survivorship:

> (a) The preceding *section [§ 36–1–19] shall not apply* to any estate which joint tenants have as executors or trustees, nor to an estate conveyed or devised to persons in their own right, *when it manifestly appears from the tenor of the instrument that it was intended that the part of the one belong to the others.* Neither shall it affect the mode of proceeding on any joint judgment or decree in favor of, or on any contract with, two or more, one of whom dies.

> (b) When the instrument of conveyance or ownership in any estate, whether real estate or tangible or intangible personal property, links multiple owners together with the disjunctive "or," such ownership shall be held as joint tenants with the right of survivorship, unless expressly stated otherwise. [Emphasis added]

Analysis of these statutes show us that what we, in fact, have is a general default rule that all "joint tenancies" are to be treated as tenancies in common unless there is an explicit agreement as to the existence of the right of survivorship. We note that this statutory scheme badly needs rewriting by the Legislature into English that anybody can readily understand without a detailed knowledge of Anglo–American property law.

**7.** We are led to wonder why Ms. Hadley and Ms. Tice would have voluntarily allowed their survivorship rights to be extinguished.

**8.** Because we are reversing the summary judgment on other grounds, we need not address the estoppel issue raised by the Bank.

reversed and the case is remanded for a new trial.

Reversed and Remanded.