497 S.E.2d 351

**Searene Two Feathers ROCK, Appellant,**

v.

**Orval Bahe ROCK, Appellee,**

v.

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Appellee.**

No. 23958.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 15, 1997.

Decided Dec. 15, 1997.

---

See also *Rock v. Rock*, 197 W.Va. 448, 475 S.E.2d 540 (1996).

Timothy Sirk, Keyser, for Appellant.

John Ours, Petersburg, for Appellee, Orval Bahe Rock.

Jerry Moore, Franklin, for Appellee, WVDHHR.

Jane Moran, Williamson, Guardian Ad Litem.

PER CURIAM:[1]

■ This appeal is brought by the appellant, Searene Two Feathers Rock, petitioner below, who requests that this Court reverse the order of the Pendleton County Circuit Court entered on August 16, 1996, which dismissed her child custody request and her request to modify a child custody order entered in Maryland. The judge dismissed the case after determining that there was a simultaneous proceeding in Maryland, that Maryland would not relinquish jurisdiction, and finding that there was no basis for jurisdiction in West Virginia. The appellant argues that the West Virginia circuit court erred in not ordering a modification in the child custody order of Maryland, and that it wrongly decided that West Virginia was without jurisdiction in this matter. We affirm the lower court's decision.

I.

This is the second time this matter has come before this Court.[2] The first appeal followed the removal of a child, Willow Red Wing, from Maryland by her mother, the appellant, Searene Two Feathers Rock, who subsequently moved from Maryland to West Virginia. At the time Ms. Rock removed the child, there was pending litigation in Maryland concerning the custody of the child. Once in West Virginia, Ms. Rock began proceedings in West Virginia requesting custo-

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) (*"Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta* .... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.")

2. For a more in-depth review of the history in this case see, *Rock v. Rock*, 197 W.Va. 448, 475 S.E.2d 540 (1996).

dy. In these proceedings, as she did in Maryland, Ms. Rock included an accusation that the father, Orval Bahe Rock, had sexually molested the child. An investigation of this accusation had been conducted in Maryland, concluding that there was insufficient evidence to support the charge.[3]

Shortly after the West Virginia proceeding was filed, the Maryland court awarded *pendente lite* custody of the child to Orval Bahe Rock, the father. Ms. Rock, now in West Virginia, had failed to appear at the Maryland custody hearing. This Maryland order was appealed to the Court of Special Appeals of Maryland which subsequently affirmed the custody decision.

The West Virginia proceeding, initiated by Ms. Rock, came before the circuit court and was dismissed pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), *W.Va. Code*, 48–10–1 to 26 [1981]. This was the basis for the first appeal to this Court. We affirmed the circuit court ruling. *See, supra,* Footnote 1. However, because the mother had assumed physical custody of the child in West Virginia, in that decision we also directed the circuit court to take evidence to establish a plan for reconciliation between the child and Orval Bahe Rock, her father. We also took notice that Ms. Rock could petition for modification of the Maryland custody order in West Virginia. *W.Va. Code*, 48–10–3 [1981].

Following our first decision, Ms. Rock filed a petition for modification in Pendleton County Circuit Court. After conducting an evidentiary hearing, and contacting the judge of the Maryland court[4] who was presiding over the Maryland proceeding, the circuit court entered an order finding that Maryland had jurisdiction, that the Maryland court should make the ultimate disposition in this case, and further ordered a reunification plan between the child and her father, following the mandate of this Court in *Rock v. Rock, supra.* This appeal followed.

## II.

■ As set forth in the original *Rock* case:

Upon verification by a West Virginia state court that a custody proceeding is pending in another state and that the out-of-state court wishes to continue its jurisdiction, obtained in substantial conformity with the requirements and principles of the Uniform Child Custody Jurisdiction Act and properly exercised, the West Virginia court is required by West Virginia Code § 48–10–6(a) (1995) to defer its exercise of jurisdiction.

The Syllabus of the Court, *Rock v. Rock,* 197 W.Va. 448, 475 S.E.2d 540 (1996).

The *Rock* syllabus echoed the purpose behind the UCCJA as codified in *W.Va. Code,* 48–10–1(a) [1981], which was created to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.

In the instant case, the circuit court took the correct action by first determining if Maryland was still exercising their jurisdictional power in this matter. Upon determining that there were simultaneous proceedings in Maryland and West Virginia, and that Maryland would not relinquish its jurisdiction, the circuit court ruled that West Virginia was not the proper forum to determine custody. As we have noted in the past, however, a West Virginia court may assume jurisdiction in a case where an emergency exists to protect the child, under the Parental Kidnaping Prevention Act, 28 U.S.C. § 1738A(c)(1) and (2)(C). In Syllabus Point 5 of *Sheila L. ex rel. Ronald M.M. v. Ronald*

---

**3.** It should be noted that if the reports of two doctors who examined the child are accurate, the child was abused between September 28, 1992 and August 5, 1993. During that time period the father had no unsupervised visitation with the child.

**4.** Under *W.Va. Code,* 48–10–6(b) [1981], Judge Cookman, upon a reasonable belief that custody proceedings were already initiated in Maryland, took the proper action in telephoning the court of Maryland to determine the status of their proceeding.

*P.M.*, 195 W.Va. 210, 465 S.E.2d 210 (1995), we said:

> It is consistent with the intent of the Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A, that a court without jurisdiction on other grounds may invoke temporary emergency jurisdiction if its exercise of jurisdiction is consistent with the laws of the state where the court is located, the child is physically present in that state, and the child is in need of protection as a result of being subjected to or threatened with mistreatment or abuse. 28 U.S.C. § 1738A(c)(1) and (2)(C).

In this case the circuit court made no determination that there existed an emergency which would place jurisdiction in West Virginia.[5]

The appellant next argues that the circuit court *could* assume jurisdiction to enter a modification of custody order pursuant to the UCCJA, as codified in *W.Va.Code*. A state court has jurisdiction to enter an initial or modification of custody order when:

> It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships.

*W.Va.Code*, 48-10-3(a)(2) [1981]. However, in this case a therapist from Maryland, Ms. Ramon, who saw the child, the father, and Ms. Rock over a period of time, had previously recommended to the Maryland court that it was in the best interests of the child that she be placed with her father. Likewise the *guardian ad litem* appointed by the West Virginia court, concluded that it would be in the best interests of the child to be placed with her father.

While the West Virginia circuit court chose not to modify the Maryland order, it did, however, enter an order placing physical custody of the child with the mother and legal custody with the West Virginia Department of Health and Human Services until a final disposition was concluded in the Maryland court. Additionally, following our earlier instruction in *Rock v. Rock, supra*, the judge set forth a careful, thoughtful reunification plan between the child and her father. This reunification plan established by the judge was followed, and the *guardian ad litem* representing the child, has advised this Court, both in her pleadings and oral arguments, that reunification with the father is in the best interests of the child.[6]

Therefore, we find that the circuit court properly followed the directions of this Court and procedure contemplated in the UCCJA. Accordingly, we affirm the circuit court's order.

Affirmed.

---

**5.** We also stated in Syllabus Point 6 of *Sheila L. ex rel. Ronald M.M. v. Ronald P.M.*, 195 W.Va. 210, 465 S.E.2d 210 (1995):

> If emergency jurisdiction is based upon the unsubstantiated statements of a parent, additional evidence should be gathered as quickly as reasonably possible to either affirm or negate the allegations. Temporary jurisdiction should last only so long as the emergency exists or until a court that has jurisdiction to enter or modify a permanent custody award is

apprised of the situation and accepts responsibility to ensure that the child is protected.

**6.** This Court would like to acknowledge the exhaustive work performed by both Circuit Court Judge, the Hon. Donald H. Cookman, and by the *guardian ad litem*, Jane Moran. Both have patiently and professionally performed their jobs, keeping at all times the best interests of the child as their goal.