500 S.E.2d 547

**KANAWHA COUNTY BOARD OF EDUCATION, Respondent below, Appellants,**

v.

**William A. HAYES, Grievant below, Appellee.**

No. 24008.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 1997.

Decided Dec. 16, 1997.

Dissenting Opinion of Chief Justice Workman Dec. 18, 1997.

Gregory W. Bailey, Charleston, for Appellant.

James M. Haviland, Crandall, Pyles & Haviland, Charleston, for Appellee.

## PER CURIAM: [1]

This appeal was filed following a final order of the Circuit Court of Kanawha County which affirmed the decision of the administrative law judge ("ALJ") of the West Virginia Education Employees Grievance Board. The circuit court affirmed the ALJ's decision that the appellant, the Kanawha County Board of Education ("Board"), failed to provide evidence sufficient to remove the appellee, William D. Hayes, from his teaching position. In this appeal the Board argues that the circuit court erred by not finding that the ALJ's decision was clearly wrong, and that the ALJ improperly used evidence presented at the pre-termination hearing.

### I.

William D. Hayes had been employed by the Kanawha County Board of Education as a mathematics teacher for 22 years, and during that time he was consistently evaluated as "excellent," or as a teacher who "exceeds expectations." During November of 1994 Mr. Hayes was working as a teacher at Sissonville Middle School and was serving as the teacher in charge of collecting money from students for lunch and snacks. The responsibility of collecting this money was performed on a rotational basis, and the teachers, who were assigned this responsibility, were also assisted by volunteer students. Mr. Hayes established a practice of allowing two students to assist him for each nine-week period so as to allow as many students to

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) (*"Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta.*... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.")

assist as possible. During November of 1994 Brittany B. and Nicky V.,[2] two seventh-grade students, were the volunteers for Mr. Hayes.

The responsibility consisted of collecting lunch money in the morning and being responsible each afternoon for the operation of the break room, a room where students were free to go during their break and purchase snacks. On the afternoon of November 14, 1994, Brittany B. and Nicky V. came to the break room to purchase snacks and were in the room with approximately six other students; an additional 115 other students were wandering the hallway. When Mr. Hayes observed Brittany B. and Nicky V. in the break room, he called them over to him and thanked them for their assistance with the lunch money collection. While thanking them, he gave Brittany B. a pat with his hand and gave each girl a Jolly Rancher, a small piece of candy.

Three class periods after the break, Brittany B. reported to the school counselor that Mr. Hayes had patted her on her buttocks. The counselor reported this to the principal who in turn reported the incident to the superintendent. The following day Brittany B. and Rachel S.[3] were interviewed concerning what occurred in Mr. Hayes' break room. At the pre-termination hearing, Rachel S. testified that she saw Mr. Hayes touch Brittany B. "on the behind." However, at the Level IV hearing on both direct and cross-examination, Rachel S. demonstrated where she saw Mr. Hayes touch Brittany B.; she indicated on her side about waist level.[4]

A recommendation was made to the Board that Mr. Hayes be terminated following the pre-termination hearing for immorality under *W.Va.Code*, 18A–2–8 [1990]. The Board followed this recommendation and terminated Mr. Hayes' employment on December 21, 1994. Following these events, Mr. Hayes requested a Level IV Grievance Hearing which was conducted on April 4, 1994. The ALJ rendered her decision of June 28, 1994, holding that the Board failed to meet its burden of proof and ordered Mr. Hayes be restored to his position with back pay. An appeal was filed with the circuit court which affirmed the ruling of the ALJ. This appeal followed.

II.

The Board appeals the decision of the circuit court which affirmed the findings of the ALJ. The authority of the circuit court is set forth in *W.Va.Code*, 18–29–7 [1985] which provides:

The decision of the hearing examiner [administrative law judge] shall be final upon the parties and shall be enforceable in the circuit court: Provided, That either party may appeal to the circuit court of the county in which the grievance occurred on the grounds that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5)

---

**2.** As is our traditional practice, we avoid using the last names of minors in cases involving sensitive facts. *See State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994); *State ex rel. Div. of Human Serv. by Mary C.M. v. Benjamin P.B.,* 183 W.Va. 220, 395 S.E.2d 220 (1990).

**3.** Rachel S. had been present in the classroom (break room) during the break period and observed Mr. Hayes' touching of Brittany B.

**4.** The Board disputes that Rachel S. demonstrated during the Level IV hearing that the touch occurred on the side. On the record, for the transcript, the attorney for Mr. Hayes stated contemporaneous with the demonstration during the cross-examination, that Rachel S. is touching her side, which narrative was not objected to or corrected. The demonstration which occurred during the Board's direct examination was nar-

rated by the ALJ who stated that Rachel S. placed her hand in the general vicinity "of the behind." However, in her written opinion, the ALJ stated that in her demonstration, Rachel S. "... placed her hand on her side, about waist level." The ALJ further stated that "[w]hen asked to demonstrate again on cross-examination, Rachel S. again put her hand on her side, at waist level. She then testified that Grievant [Hayes] did not touch Brittany B. squarely on her behind, but on her side."

Therefore, since the ALJ was present during both demonstrations and in her decision she states that Rachel S. touched her side during these demonstrations, we cannot determine that the demonstration was other than what the ALJ stated it was.

was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In reaching its decision, the circuit court relied upon *Board of Education of County of Mercer v. Wirt*, 192 W.Va. 568, 579, 453 S.E.2d 402, 413 (1994) which provides that an appellate court may not reverse a lower tribunal's conclusion under the clearly erroneous standard, if the conclusion is plausible when viewing the evidence in its entirety.

■ The standard of review for this Court in these cases was set forth in Syllabus Point 1, *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989) which states:

A final order of the Hearing Examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* [1985] and based upon findings of fact, should not be reversed unless clearly wrong.

■ Upon reviewing the evidence in its entirety, we find that the ALJ's conclusions were plausible and not clearly wrong. The ALJ was present during all of the testimony and was able to perceive first-hand the demonstrations of all of the witnesses, including Rachel S., who had been presented as a witness favorable to the Board's position. Based on these demonstrations and testimony, the ALJ determined that Mr. Hayes did not touch Brittany B. on her buttocks but on her side, and that this action did not constitute immoral conduct. The evidence of this case does not show that the ALJ was clearly wrong and her decision should therefore stand.

For the foregoing reasons we affirm the order of the Circuit Court of Kanawha County.

Affirmed.

WORKMAN, Chief Justice, dissenting:
(Filed Dec. 18, 1997)

Ye gads again! In 1994, this Court upheld an ALJ decision putting back into the elementary school a janitor who was determined by the ALJ to have touched a child's breast and buttocks on the zany reasoning that the Board of Education had not proven that the touching was sexual in nature! In their zeal to protect the teacher's job in the instant case, the majority once again departs from all common sense and once again rewards the wrong-doer. Like the janitor who enjoyed fondling little girls, this teacher is sent by the majority back to school with a nice fat reward of backpay.

The evidence presented on the issue of whether the teacher committed an act of immorality within the meaning of West Virginia Code § 18A–2–8 (1993) included the testimony of Brittany B. that Mr. Hayes put his hand squarely on her buttock after calling her to "come ... closer" to his desk. She came to the school counselor the same day in tears. The counselor testified that Brittany B. had in fact reported to her that Mr. Hayes had touched her on the buttocks and that Brittany B. was "most upset, she was tearful, she was shaking, she was very unnerved" when she related the incident. The counselor indicated in response to a question during the Level IV proceeding regarding the possibility that Brittany B. was fabricating the incident, that "[s]he seemed very sincere, very truthful." Even the ALJ found Brittany B. to be "forthright" in her testimony. There was not a shred of evidence, or even an argument made, that ascribed any motive on the part of this child to lie.

A classmate of Brittany B.'s, Rachel S., testified consistently that Mr. Hayes had in fact placed his hand on Brittany B.'s buttocks.[1] The ALJ found Brittany to be "forthright," yet disregarded both Brittany B.'s testimony regarding the location of the touching and Rachel S.'s testimony, and concluded, consistent with Mr. Hayes' description that the location of his hand was on Brittany B.'s back.[2]

---

1. However, during cross-examination at the Level IV hearing, Mr. Hayes' attorney got her to demonstrate the positioning of Mr. Hayes' hand and to agree that it was "sort of on the side of the hip." The ALJ seized on this slight variance to sanitize the episode.

2. He testified that he placed his hand on Brittany B.'s back above the waist.

Other evidence was presented at the Level IV regarding Mr. Hayes touching another student in an inappropriate fashion. That student, Tracy J., testified that Mr. Hayes put his hand under her jacket and "rubbed" her side. Another student corroborated that Mr. Hayes had put his arm around Tracy J. and that the student appeared upset afterwards. There was also evidence that he initiated personal discussions with students about their dating practices. In addition to the Tracy J. incident, there was also evidence presented that two years prior to the Brittany B. incident, Mr. Hayes had been warned to refrain from having inappropriate contact with students.[3] Thus, the blemish-free picture that the majority attempts to paint of Mr. Hayes' record is not an accurate one. He in fact had a history of inappropriate conduct with regard to students.[4]

The reasoning employed by the majority in the *Wirt* decision was almost laughable (were it not for the sensitive and serious nature of the allegations). There, although the janitor was found to have touched the student on the breasts and buttocks, the ALJ nonetheless concluded the Board failed to prove that these touching incidents were sexual or immoral in nature. As I said in my dissent to *Board of Education v. Wirt*, 192 W.Va. 568, 453 S.E.2d 402 (1994):

> The majority goes on ad nauseam about the rights of Mr. Wirt—but what about the rights of children ...? Not a word. Children ought to be entitled to a safe environment in our public schools. Parents ought to have the right to send their children to school with peace of mind that they will not be harmed. We have plenty of decent, hard-working people in this State who would happily work as a school custodian, but the majority's opinion places signifi-

cant restraints on the ability of boards of education of this State to get rid of the bad apples and fill their positions with decent, hard-working people.[5]

> The majority opinion is a good example of why more and more people in this country are fed up with the judicial system. When we treat cases that require a little common horse sense like some kind of esoteric exercise in legal gymnastics, we short-change those who look to us for justice.

192 W.Va. at 581, 453 S.E.2d at 415 (J. Workman, dissenting) (footnote added).

The ALJ transformed this case into one in which the Board is required to prove the nature of the conduct, i.e. whether in fact the individual conducted the improper touching with or for any improper motivation.[6] As I said in my dissent to *Wirt*, there is a real *legal* (not just factual) issue before us: "whether the Board actually has to prove the *intent* of the act in a school disciplinary context." *Id.* at 580, 453 S.E.2d at 414. This really likens the burden of proof to one commensurate with a criminal case. *See id.* This Court's implicit resolution of that issue in *Wirt* has set a dangerous precedent which is already permitting individuals like Mr. Hayes to get away with improper conduct. The ALJ relied heavily on *Wirt*, in her decision, stating that: "It can be concluded that Grievant [Mr. Hayes] touched Brittany B. on November 14, 1994. It cannot be concluded, however that the testimony portrays with certainty that the nature of that touching was 'immoral.'" One must to ask when is the case to be presented that will irrefutably establish the nature of the unwanted touching as immoral sufficient to permit a school Board's action to be upheld. Frankly, these decisions create open season on children.

3. A parent in 1993 called the school counselor complaining that Mr. Hayes had made inappropriate comments to her daughter. Although Mr. Hayes denied the allegations, the Board issued a memorandum instructing "Mr. Tidquist [the principal] ... [to] direct Mr. Hayes to avoid inappropriate personal contact to students by phone and to be professional at all times in his relationships with students."

4. The majority does not even discuss the fact that this additional evidence was introduced against

Mr. Hayes in connection with the grievance proceedings.

5. Frankly, I think *most* teachers and other school personnel are really intelligent, moral, hardworking people who also want rid of the bad apples who sully the reputation of their profession.

6. By the way, can anybody in the majority think of *any* appropriate reason for an adult male instructor to be touching intimate areas of a teen-aged student's body?

**736**

Even if this case is viewed strictly in the legal context of overturning the factual findings of an ALJ, as Justice Cleckley stated in syllabus point one in *In re Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996), "[a] finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (In other words, if it walks like a duck, looks like a duck, and quacks like a duck, it is a duck.) I have reached that requisite "definite and firm conviction that a mistake has been committed." *Id.* No grown man, but most especially a school teacher in whose charge and supervision we place our children, has any business touching the bodies of these children or making personal conversation about their dating practices. It is hard enough for a twelve-year-old child to muster the courage to make accusations against a teacher. When we disregard the complaining witnesses' testimony, although deemed forthright by the fact-finder, and verified by an eyewitness and supported by additional circumstantial evidence, we send out a clear message to current and future victims that they need not bother complaining as no one will believe them over an adult.

Based on the foregoing, I respectfully dissent. I am authorized to say that Justice MAYNARD enthusiastically joins me in this dissent.