506 S.E.2d 345

DAVE SUGAR, INC., Petitioner below, Appellee,

v.

WEST VIRGINIA HUMAN RIGHTS COMMISSION and Barbara Schick, Respondents below, Appellants.

No. 22627.

Supreme Court of Appeals of West Virginia.

Submitted June 2, 1998.

Decided July 13, 1998.

---

Darrell V. McGraw, Jr., Attorney General, Paul R. Sheridan, Senior Assistant Attorney General, Charleston, for Appellants.

Dave Sugar, Inc., Pro se, Appellee.

PER CURIAM:[1]

In the instant case, we reverse a decision of the Circuit Court of Kanawha County. The circuit court overturned a decision of the West Virginia Human Rights Commission. The Commission found that Dave Sugar, Inc., a contractor, was guilty of sex discrimination in hiring at a construction project in Braxton County. We hold that because there was substantial evidence of such illegal discrimination, the circuit court erred in reversing the Commission's decision.

## I.

### A. Procedural History

This action originated as a complaint before the West Virginia Human Rights Commission ("Commission"), brought by the appellant Barbara Schick against the appellee Dave Sugar, Inc. ("Sugar"), an Ohio corpora-

tion authorized to do business in West Virginia. The complaint alleged sex discrimination in Sugar's failure to hire Schick as a laborer on a construction job in Braxton County, West Virginia. Discrimination on the basis of sex in employment is prohibited by *W.Va.Code*, 5–11–9 [1989 and 1992].

The matter was heard before an administrative law judge ("ALJ"), who found that Sugar illegally discriminated against Ms. Schick. As part of the ALJ's decision, Ms. Schick was awarded $39,231.60 in back pay damages and $2,950.00 in incidental damages. The ALJ issued a 41–page decision containing extensive findings of fact and an analysis of the law as it applies to those facts. Sugar sought administrative review of the decision pursuant to *W.Va.Code*, 5–11–8 [1989]. By final order entered on April 15, 1994, the Commission affirmed the decision of the ALJ.

Sugar appealed the Commission's final order to the Circuit Court of Kanawha County pursuant to *W.Va.Code*, 5–11–11 [1989]. On July 20, 1994, the circuit court reversed the Commission's final order. The Commission appealed to this Court and we accepted the petition for appeal on November 29, 1994.

Thereafter, because Sugar filed for bankruptcy, this Court stayed further proceedings. In February of 1998, the Commission asked this Court to set a renewed briefing schedule. After a review of applicable bankruptcy law, we agreed with the Commission that this matter was not subject to the automatic stay provisions of the bankruptcy code, 11 U.S.C. 362(a), because a Commission proceeding is an exercise of governmental regulatory powers under 11 U.S.C. 362(b)(4) and (5) and thus exempt from the automatic stay. *See EEOC v. McLean Trucking Co.*, 834 F.2d 398 (4th Cir.1987).[2] Therefore we set the matter for briefing and argument. Subse-

the resolution of this factual matter to be unnecessary to the decision of this case.

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. However, the Commission agrees that subsequent to this Court's ratification of the Commis-

sion's final decision in the instant case, execution upon or enforcement of the Commission's back pay award would be a proceeding that must be undertaken against Sugar in the bankruptcy court. The record suggests that, as of the date of this opinion, the Sugar bankruptcy proceedings have not been completed; there may be assets in the Sugar estate; and the trustee in the Sugar bankruptcy is aware of the instant proceeding before this Court and has not objected to its going forward.

quently, we allowed Sugar's previous counsel, upon a proper motion, to withdraw. Although Sugar received notice of the proceedings before this Court, Sugar did not enter an appearance, file a brief, or participate in oral argument. We do have the benefit of Sugar's briefs before the circuit court.

## B. Factual History [3]

Dave Sugar, Inc. was a construction contractor for a project of the Flatwoods–Canoe Run Public Service District in Braxton County, West Virginia. Work on the project began late in 1990 and extended into 1993.

Barbara Schick is a woman who at the time of filing her complaint resided in Braxton County. On April 2, 1991 she went to Sugar's construction site office to apply for work. She spoke with Lee Kerr, the superintendent on the job, and told him that she wished to apply for a job as a laborer, flag person, or seeder. Mr. Kerr laughed at Ms. Schick. He asked her if she could lift a bale of hay. When Ms. Schick asked for an application, Kerr told her that there were no applications. Ms. Schick left a copy of a resume.

Ms. Schick returned to Sugar's job site office on April 9, 1991, again to seek employment. This time Shirley Cutlip accompanied her. The women spoke with Paula Gerkin, Sugar's office manager. Ms. Gerkin told them that there were no applications.

Laborer positions on the Flatwoods–Canoe Run job, including flag person and seeder, did not require any specific skills or experience. In all, 43 males worked on the Flatwoods–Canoe Run project. Most of them were hired after Barbara Schick was refused an opportunity to apply. Those hired included Lester Wimer, a local resident who applied after Barbara Schick's attempt. Wimer, who had not worked for Sugar before, was hired as a flag person. While most of the men hired had worked for Sugar on previous occasions, Sugar was under no continuing obligation to its previous employees, and it considered each project a new job and

a new employment situation, for the purpose of hiring.

Sugar had been under pressure by the Ohio Department of Administrative Services to take steps to achieve greater gender balance in its employment—to do something other than perpetuate its almost exclusively male work force. Sugar had represented that it intended to pursue this through a more open process of hiring laborers. In response to the department's inquiries as to how Sugar proposed to deal with its underrepresentation of women among its workers, Sugar had written: "We specify in our advertisements that experience is preferred, but not required. Due to the fact that the construction industry has notoriously employed males, this opens the door to females who in the past have not received training and experience in this field."

Sugar's project supervisor, Lee Kerr, the person who did the hiring for the Flatwoods–Canoe Run Project, testified that his understanding of hiring requirements applicable to federally funded construction projects was that "on some jobs you're required to hire them [women and minorities] and on some jobs you're not." Kerr testified that on jobs where they "do have to worry about hiring minorities," that they do hire them. He went on to explain that it was his understanding that on the Flatwoods–Canoe Run Project "that we didn't have to hire them." It appears that Kerr believed that in the absence of an affirmative obligation to hire women pursuant to federal requirements, he had no duty to give women applicants any consideration at all.

Sugar's payroll records indicate that the Flatwoods–Canoe Run project was active from December 1990 through as late as July 1992. A man who was hired as a flag person and worked between June and December 1991 earned $13,168.92 (not including benefits), averaging $2,127.74 per month. The reason for his termination is not disclosed in the record; however, the ALJ found that the job continued, and Sugar employed a substantial work force through July 1992. The

---

**3.** These factual statements are essentially taken from the findings of fact made by the ALJ in the instant case. While the circuit court disagreed as noted herein with the ALJ's conclusions on certain key points, the circuit court did not, except as noted, specifically quarrel with the ALJ's many enumerated factual findings.

ALJ concluded that if Barbara Schick had been hired as a flag person in April of 1991, she could have reasonably expected to earn $2,127.74 per month in wages and $561.19 per month in benefits through June 1992.

After a lengthy hearing at which the foregoing facts were established, the ALJ concluded and the Commission agreed that Sugar had committed illegal sex discrimination against the appellant, by not affording her an opportunity to be considered for and by not hiring her for a laborer's job.

### C. The Circuit Court's Ruling

The circuit court agreed with the ALJ that Ms. Schick, by showing that she was a woman who had not been hired while men were, had raised an inference of discrimination. However, the circuit court disagreed with the ALJ's finding that Sugar's articulated reasons for not hiring Ms. Schick were pretextual. The circuit court concluded that Sugar had "successfully rebutted the presumption of discrimination by clearly establishing evidence of nondiscriminatory reasons for the decision not to consider complainant for employment."

The circuit court specifically concluded that the evidence had failed to establish that a male applicant had received an application during the period of time Ms. Schick was refused one; that only two workers other than Sugar's previous employees were hired for the job, both more qualified than Ms. Schick; and that one of those workers, Lester Wimer, was specifically hired for his experience and training in surveying. The Commission contends on appeal that each of these conclusions by the circuit court was erroneous.

### II.

"West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties." Syllabus Point 1, *West Virginia Human Rights Commission v. United Transportation Union, Local 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981).

Although the circuit court's order states that "the record in this case is completely devoid of discrimination ...," on this point we must respectfully disagree with the circuit court and agree with the Commission. The record clearly contains substantial evidence supporting the Commission's conclusion that Sugar's explanations for not hiring the appellant (or any other women) were pretextual.

It is true that this evidence is not "direct" evidence. Not surprisingly, the testimony of Sugar's two management witnesses generally conformed to Sugar's position. There were no independent witnesses who were in a position to provide a "smoking gun"—no witness, for example, produced clandestine tapes of management discussions about why no women should be hired.

However, proof of discrimination by circumstantial evidence is a standard means of establishing discrimination, and this Court has recognized that a complainant may use circumstantial evidence to show discriminatory intent. *See, e.g., Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 76, 479 S.E.2d 561, 586 (1996) ("whether the plaintiff's proof is by direct or circumstantial evidence, or both, has nothing to do with the strength of her case ... [c]ircumstantial evidence can be powerful, and direct evidence limp, and vice versa."); *Barefoot v. Sundale Nursing Home,* 457 S.E.2d 152, 160, 193 W.Va. 475, 483 (1995) ("Pretext may be shown through direct *or circumstantial evidence of falsity or discrimination.*" (Emphasis added)); *Holbrook v. Poole Associates, Inc.,* 184 W.Va. 428, 432, 400 S.E.2d 863, 867 (1990) (*per curiam* ) ("[d]irect evidence, however, is not required").

In the instant case, the ALJ's discussion of the record revealed substantial circumstantial evidence of an illegal and discriminatory motive in Sugar's conduct toward the appellant. Many of the ALJ's findings were reached, not by reference to a single witness or document, but by looking at several pieces of evidence in juxtaposition. This comparative analysis of the evidence allowed the ALJ to discern substantial conflicts and inconsistencies in the positions taken by Sugar.

As the ALJ's final decision states:

The respondent's claims are not consistent. On the one hand, respondent claimed that it did not need any more workers and only accepted applications as a courtesy or to meet federal requirements. But the evi-

dence made it clear that that job was just getting underway and that it did more hiring subsequently. Respondent claimed that it already had enough qualified applicants prior to complainant's application; however, the evidence revealed that it later hired a male who applied subsequently to do a job complainant was well qualified to do. In order to explain this fact, respondent claimed that Wimer was hired to do a specialized job which would draw on his two to three months of specialized experience, but Wimer himself testified that he knew nothing of this and never performed any services more skilled than flagging. Finally, respondent tried to attack complainant's job references, despite the fact that job references were not checked on any applicants, even those who were hired.

We have reviewed the testimony cited by the ALJ and we agree that the ALJ's de-tailed identification and analysis of a number of substantial and relevant contradictions in Sugar's evidence amply supported the ALJ's decision not to credit the *post hoc* explanations offered by Sugar for declining to hire the appellant, or even to permit her to apply for a job.[4]

In summary, there was an ample evidentiary basis for the Commission's decision.

### III.

We reverse the order of the Circuit Court of Kanawha County and remand this case for reinstatement of the final order of the West Virginia Human Rights Commission.

Reversed and remanded.

---

4. For example, the circuit court concluded that although Ms. Schick was refused an application form, it was not because of her sex. The circuit court noted that Ms. Schick was twice told that Sugar was not taking applications at that time, that a sign in Sugar's office said as much, and that "not a single witness could confirm that any other person, let alone a male, received an application during the time when the complainant requested one."

It is true that no single witness's testimony confirmed this latter fact. However, documentary evidence showed that a male applicant did receive an application at the time the appellant asked for one—probably during the week between the two occasions when the appellant was refused one. Richard L. Cook submitted an application dated April 7, 1991, 5 days after the appellant's first visit to Sugar's office and 2 days before her second visit. Cook testified that although he could not recall the exact date on which he submitted his application, he submitted it within a week from when he picked it up at respondent's office. This evidence entitled the ALJ to believe that Cook obtained an application form during the same period when the complainant was refused one.

The circuit court also stated that the ALJ had no basis for disbelieving Sugar's assertion that Lester Wimer was hired—after the appellant had indicated her interest in the job—because of Wimer's experience and education in surveying. The circuit court stated that on this point "all witnesses agreed" (that is, all of Sugar's witnesses, the only ones claiming to have knowledge about why he was hired) that Wimer was hired due to superior qualifications.

However, all of the documentary evidence reflected that Wimer was hired, titled and paid as a flagman, the lowest grade of laborer. No job descriptions, letters, titles, pay differentials, or documents of any kind suggested that Wimer's surveying experience was of any value to Sugar, or was given any credit in the hiring decision. Kerr testified for Sugar that Wimer actually used his surveying skills, while Wimer denied that he ever did any surveying. Gerkin represented Wimer's experience as 2 to 3 years of experience as a surveying helper, while Wimer's application reflects that it was actually 2 to 3 months.

Paula Gerkin testified for Sugar that Wimer had applied for a job with Sugar *prior* to the beginning of the Flatwoods–Canoe Run project, and that Wimer later submitted a second application at the Flatwoods–Canoe Run job site, after the complainant had submitted her application. Gerkin testified that she did not have a copy of the first application.

However, Gerkin's testimony, suggesting that Wimer was given consideration because he had a previous application on file with Sugar, was belied by Wimer's testimony. Wimer testified that his June, 1991 application was the only application he submitted.

Notably, the copy of Wimer's application form provided to the Commission by Sugar was originally dated June 8, 1991, consistent with Wimer's testimony as to when he submitted the application, and also consistent with the dates of the work experience given in the application.

However, on the copy of application form submitted to the Commission by Sugar, the ALJ found that the numeral "1" in the year "91" had been changed to a "0". Wimer testified that he did not change the date on this form. The ALJ found that this apparent "backdating" of Wimer's application was an attempt by Sugar to buttress its case by falsifying evidence.