507 S.E.2d 132

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, ex rel., Angela McCLURE, Social Service Worker, Petitioner below, Appellee,**

v.

**DANIEL B., Gwendolyn B. (now Gwendolyn B. Adkins), Respondents below, Appellees,**

**Erica B. and Shantelle B., Appellants.**

**No. 25002.**

Supreme Court of Appeals of West Virginia.

Submitted June 2, 1998.

Decided July 15, 1998.

Concurring Opinion of Justice Workman July 20, 1998.

Workman, J., issued concurring opinion.

Lisa F. White, Esq., Huntington, West Virginia, Attorney for Appellants.

Gary Wayne Frasher, Esq. Huntington, West Virginia, Attorney for Appellee Daniel B.

Barbara L. Baxter, Esq. Assistant Attorney General, Charleston, West Virginia, Attorney for Appellee.

Per Curiam: [1]

This is an appeal filed on behalf of Erica and Shantelle B.[2] by Lisa White who was appointed as *guardian ad litem* ("GAL") for Erica and Shantelle. The GAL contends that the Circuit Court of Cabell County erred in the court's denial of a motion to terminate the improvement period of Daniel B., father of Erica and Shantelle B., after he failed to fulfill the requirements of a post-adjudicatory improvement period. The Department of Health and Human Services ("DHHR") filed a brief as an appellee supporting the appellant's position. After a review of the entire record we agree with the GAL and the

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See In re Jeffrey R.L.,* 190 W.Va. 24 n. 1, 435 S.E.2d 162 n. 1 (1993).

DHHR and reverse the December 31, 1997 order of the circuit court and remand this matter for further proceedings.

## I.

On May 7, 1997, a petition was filed by the DHHR seeking the termination of the parental rights of Daniel B. and Gwendolyn B., the divorced parents of Erica and Shantelle B. The petition alleged that the children had been abandoned by their parents to foster care. DHHR sought to terminate their parental rights so that the children could be placed in a permanent situation.[3]

At hearings on July 7 and 9, 1997, the Circuit Court of Cabell County found that the father, Daniel B., had neglected his children by failing to pursue court action to regain custody of the children. The circuit court further found that the mother of the children had both neglected and abused the children.

The father, Daniel B., immediately following the July 9, 1997 ruling, filed a motion for a post-adjudication 6–month improvement period. On September 4, 1997, the circuit court granted Daniel B.'s motion for the improvement period and further provided for a review hearing on December 1, 1997.[4] During the improvement period, Daniel B. was directed by the court to find acceptable housing, receive treatment for substance abuse, attend counseling and parenting classes, remain drug and alcohol free and to submit to random drug screens.[5]

At the review hearing on December 1, 1997, the DHHR and the GAL asked the court to set the matter for an evidentiary hearing in anticipation of filing a motion to terminate the father's improvement period for noncompliance. On December 9, 1997 an evidentiary hearing was conducted, and evidence was submitted to the circuit court demonstrating that Daniel B. had failed to adhere to the family case plan (terms of the improvement period). Testimony was elicited indicating that Daniel B. had failed to find adequate housing, had submitted three atypical urine samples, and had ceased attending counseling. Under oath, Daniel B. admitted to drinking alcohol to the point of intoxication and to using illegal drugs during the improvement period.

Following the testimony, and after all the evidence had been submitted, the circuit court denied the DHHR and GAL's motions to terminate the improvement period. This appeal followed.

## II.

The standard of review in abuse and neglect proceedings was set forth in *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), in which we said:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syllabus Point 1, *In the Interest of: Tiffany Marie S., supra.*

Of primary concern to this Court is the protection of children. . "Although par-

---

**3.** The record reflects that the children had been placed in foster care for a period of 6 years during the hostile divorce which occurred between Daniel and Gwendolyn B.

**4.** On September 8, 1997 the circuit court by separate order terminated the rights of Gwendo-

lyn B., and as this order was not appealed, it is final.

**5.** This program was the family case plan established for Daniel B. by DHHR.

ents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syllabus Point 1, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996).

█ In this matter, the father had an extensive history of alcohol and drug abuse. There were indications that there was physical abuse and even accusations of sexual abuse. "[C]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened ...". Syllabus Point 1, in part, *Interest of Darla B.,* 175 W.Va. 137, 331 S.E.2d 868 (1985).

With the history of this case and the lack of cooperation exhibited by Daniel B. during the course of his improvement period, the DHHR and the GAL acted correctly under *W.Va.Code,* 49–6–12(f) [1996] [6] in asking the circuit court to terminate the father's improvement period. This statutory requirement is to be strictly construed by the trial court. Furthermore, the action of the GAL was consistent with the standards established by this Court in *In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993) for GALs in infant representation in abuse and neglect proceedings.

Although the order of the circuit court failed to make proper findings of facts, based on the record before us, we hold that the circuit court's conclusion in denying the motions to terminate the improvement period was clearly erroneous.

### III.

Therefore, the order of the Circuit Court of Cabell County dated December 31, 1997, denying the petition to terminate the improvement period is reversed, and this matter is remanded to the circuit court for an evidentiary hearing on termination of parental rights.

Reversed and remanded.

WORKMAN, Justice, concurring:
(Filed July 20, 1998)

As the majority recognizes in footnote six of its opinion, West Virginia Code § 49–6–12 (1996) is a new enactment specifying that an improvement period shall be terminated when the individual fails to participate in any provision of the improvement period. This statute is to be strictly construed and is consistent with this Court's prior pronouncements regarding the objectives of an improvement period. In *State ex rel. Amy M. v. Kaufman,* 196 W.Va. 251, 470 S.E.2d 205 (1996), for instance, this Court explained that House Bill 4138, effective June 8, 1996, revised West Virginia statutory law on improvement periods and "establishes a clear statutory mandate to limit pre-adjudicatory improvement periods to three months, and post-adjudicatory improvement periods to six months, with a three-month extension of a post-adjudicatory improvement period possible under certain circumstances." 196 W.Va. at 258, 470 S.E.2d at 212. We also stated in *Amy M.* that the "goal of an improvement period is to facilitate the reunification of families whenever that reunification is in the best interests of the children involved." *Id.*

We acknowledged in *West Virginia Department of Human Services v. Peggy F.,* 184 W.Va. 60, 399 S.E.2d 460 (1990), that it is possible for an individual to demonstrate "compliance with specific aspects of the case plan" despite that individual's failure to enhance his "overall attitude and approach to parenting." 184 W.Va. at 60, 399 S.E.2d at 464. As we pointed out in *In re Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991), delays occasioned by multiple hearings and attempts to determine whether improvement periods should be continued wreak havoc upon the

---

**6.** *W.Va.Code,* 49–6–12(f) [1996] provides:
When any respondent is granted an improvement period pursuant to the provisions of this article, the department shall monitor the progress of such person in the improvement period. When the respondent fails to participate in any service mandated by the improvement period, the state department shall initiate action to inform the court of that failure. When the department demonstrates that the respondent has failed to participate in any provision of the improvement period, the court shall forthwith terminate the improvement period.

lives of these children whom the system is attempting to protect. 185 W.Va. at 623, 408 S.E.2d at 375.

Certainly many delays are occasioned by the fact that troubled human relationships and aggravated parenting problems are not remedied overnight. The law properly recognizes that rights of natural parents enjoy a great deal of protection and that one of the primary goals of the social services network and the courts is to give aid to parents and children in an effort to reunite them.

The bulk of the most aggravated procedural delays, however, are occasioned less by the complexities of mending broken people and relationships than by the tendency of these types of cases to fall through the cracks in the system. The long procedural delays in this and most other abuse and neglect cases considered by this Court in the last decade indicate that neither the lawyers nor the courts are doing an adequate job of assuring that children—the most voiceless segment of our society—aren't left to languish in a limbo-like state during a time most crucial to their human development.

*Id.*

Rule 23(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings also provides that where "respondent(s) fail to comply with the terms and conditions of the improvement period or evidence an inability to remediate the circumstances giving rise to the abuse and/or neglect, any party may file a motion to revoke the improvement period."

It is incumbent on the circuit courts to be aware of this change and adhere to it.