Dana SAFLEY *v.* STATE of Arkansas

CA CR 90-14                               797 S.W.2d 468

Court of Appeals of Arkansas
Division II
Opinion delivered October 24, 1990

112

*Allen & O'Hern Law Firm*, by: *Arthur L. Allen*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant was charged with two counts of possession of a controlled substance with intent to deliver (cocaine and marijuana), but the jury found her guilty of two counts of the lesser offense of possession of a controlled substance. She was sentenced to serve ten years in the Arkansas Department of Correction.

On August 10, 1988, Little Rock Police Department Detective Patti Watson obtained a warrant to search a residence located at 1605 South Pierce Street being occupied by Dana Safley. The affidavit for the warrant stated it was based on "information from a reliable confidential informant" that appellant was in possession of and selling cocaine from this residence. The affidavit also stated:

> [O]n 08-10-88, the same said reliable confidential informant was searched by a Little Rock Police Officer for any concealed money and/or contraband with negative results and at that time the same said reliable confidential informant was supplied with a quantity of money for the purpose of purchasing cocaine from Dana Safley. The same said reliable confidential informant was then observed going to and entering the residence located at 1605 South Pierce Street, Little Rock, Pulaski County, Arkansas. After approximately ten (10) minutes the same said reliable confidential informant was observed leaving the residence and then he/she returned to the affiant and handed the affiant one clear plastic bag containing white powder. The same said reliable confidential informant stated that he/she had purchased the clear plastic bag containing white powder from Dana Safley and Dana Safley had represented the white powder as cocaine. A portion of the white powder was then field tested by the affiant and the field test reacted positive for cocaine.

After the warrant was obtained, Detective Watson and several other officers went to the residence and executed the

warrant. During the search the officers found a brown paper sack containing 3 plastic bags of green vegetable matter; 12 plastic bags containing white powder which later proved to be cocaine; a set of hand-held scales and a box of sandwich bags; a black heart-shaped object containing green vegetable matter; a bottle of inositol powder (a substance the evidence showed is frequently used as a "cutting agent" for cocaine); a sack of drug paraphernalia; and a tray with cigarette papers and green vegetable matter.

Because appellant's third point for reversal challenges the sufficiency of the evidence, we address it first. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). In that point, appellant contends the trial court erred in denying her motion for directed verdict because the evidence was insufficient to sustain her conviction. Appellant argues the state presented no evidence to support its argument that she was responsible for the drugs being in the house where they were found.

In reviewing the question of the sufficiency of the evidence in a criminal case, this court views the evidence in the light most favorable to the appellee and affirms the judgment if there is substantial evidence to support the findings of the trier of fact. *Lane* v. *State*, 288 Ark. 175, 702 S.W.2d 806 (1986); *Harris* v. *State*, 15 Ark. App. 58, 689 S.W.2d 353 (1985). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Jones* v. *State*, 269 Ark. 119, 598 S.W.2d 748 (1980). The fact that evidence is circumstantial does not render it insubstantial. *Small* v. *State*, 5 Ark. App. 87, 632 S.W.2d 448 (1982). And in *Osborne* v. *State*, 278 Ark. 45, 643 S.W.2d 251 (1982), the court explained:

> We have said that possession need not be actual, physical possession, but may be constructive, when one controls a substance or has the right to control it. Constructive possession can be implied when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control, or to the joint control of the accused and another, but neither actual nor exclusive possession of the contraband is necessary to sustain a charge of possession. . . . However, we have also

held that joint occupancy of premises alone will not be sufficient to establish possession or joint possession unless there are additional factors from which the jury can infer possession.

278 Ark. at 50 (citations omitted).

■ Here, there is evidence that appellant had lived in the house; that she moved to Hot Springs sometime between June and August 1988; that on August 9 she came back to Little Rock to gather her clothes and belongings from the house; that she slept in the house; and that she was alone in the house when the police officers arrived. In the bedroom, the officers found marijuana in appellant's purse and also in a bag near an open suitcase containing women's clothing. In the same bedroom the officers found the 12 plastic bags of cocaine, the scales, and the box of sandwich bags in the dresser on top of which were some toiletries and mascara. A bottle of inositol powder was found in appellant's purse. There was also evidence that the confidential informant had purchased cocaine from the appellant on the very day the search warrant was executed. We think these circumstances are enough to permit the jury to find appellant guilty of possession of a controlled substance.

Appellant's first point for reversal is that the trial court erred in denying her motion to suppress the evidence because the evidence was seized upon the authority of a search warrant issued without probable cause to support the informant's reliability and without probable cause to believe appellant was in possession of the items to be seized.

In *Watson* v. *State*, 291 Ark. 358, 724 S.W.2d 478 (1987), the court said:

> In *Illinois* v. *Gates*, 462 U.S. 213 (1983), the two-pronged test of *Aguilar* and *Spinelli* was replaced by a different test—"a practical, common sense decision," based on all the circumstances, including the veracity and basis for knowledge of persons supplying information. It is sufficient if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Under *Gates* it is the duty of the reviewing court simply to insure that the magistrate issuing the warrant had a

substantial basis for concluding that probable cause existed.

291 Ark. 363.

■ The *Gates* "totality of the circumstances" test has been used in Arkansas ever since it was adopted in *Thompson* v. *State*, 280 Ark. 265, 658 S.W.2d 350 (1983). Applying that test here, we think a practical reading of the affidavit upon which the warrant was issued reveals that Detective Watson had reasonable cause to believe that cocaine was being concealed in the residence at 1605 South Pierce Street, being occupied by appellant. The affidavit states that Watson received information from a reliable confidential informant that appellant was in possession of and selling cocaine from the residence. The affidavit establishes the reliability of the confidential informant by stating that the confidential informant had in the past provided information pertaining to narcotics trafficking in the Little Rock area on at least seven occasions which had proved correct. The affidavit details a controlled buy from the appellant at the residence on South Pierce Street and states the Little Rock Police Department had on file three reports stating cocaine was being trafficked from the residence and three reports stating appellant was involved in narcotics trafficking in the Little Rock area. Therefore, we find there was probable cause for the issuance of the search warrant under which the evidence was seized.

Under her first point, the appellant also contends the search warrant was defective because the return of service was not timely filed. Appellant says the warrant was issued and executed on August 10, 1988, but the return of service was not filed until December 15, 1988.

■ Arkansas Rule of Criminal Procedure 13.4(b) provides:

> An officer who has executed a search warrant . . . shall, as soon as possible and not later than the date specified in the warrant, return the warrant to the issuing judicial officer together with a verified report of the facts and circumstances of execution, including a list of things seized.

At the hearing on the motion to suppress, Detective Watson

testified that when the original return was filled out it was mistakenly stated that the warrant was executed on "8-8 of '88 at 1710 hours," and during preparation of the case file, Detective Stephens noticed the error and made an amended return correcting the date to "8-10 of '88." He testified that all the items contained on the original return are the same as mentioned in the amended return and that the original misdated return was filed on "8-12 of '88." In denying the motion to suppress, the trial judge stated that although the wrong date was put on the return originally, an amended return was filed on which the date was corrected; therefore, we cannot agree that the return was untimely filed. But, even if the return was not timely filed, there is no evidence that it was willful and no evidence that the appellant was prejudiced by the failure to originally file the return with the date of execution correctly stated. Therefore, the court did not err in denying the motion to suppress that was based upon the contention that the return was not timely filed. *See McFarland* v. *State*, 284 Ark. 533, 549, 684 S.W.2d 233 (1985).

Appellant's next argument is that the trial court erred in denying her motion to dismiss the charges because of police misconduct. She contends that after her arrest she was approached by Detective James Stephens, who said if she would become a confidential informant, or provide a confidential informant to work in her behalf, and drugs were recovered in an equal amount as were found in her arrest, the charges against her would be dropped or reduced. She testified that the police subsequently recovered drugs as a result of her assistance; that the drugs recovered were in the quantity as were involved in her arrest; and that the detective failed and refused to drop or reduce the charges or to recommend that the charges be dismissed. Appellant argues she is entitled to the benefit of the bargain on which she relied. The detective, however, denied that appellant's testimony was completely true. It was his testimony that he said he would ask the prosecuting attorney to reduce or dismiss the charges against appellant if she supplied information that led to arrests. He admitted that appellant provided an informant but said he found the informant could not be trusted. And Stephens said that while some drugs were seized as a result of appellant's help, no arrests were made.

In support of her argument appellant cites *Santobello*

v. *New York*, 404 U.S. 257 (1971), but that case is not applicable here. It deals with the failure of the prosecuting attorney's office to keep a "plea bargain" agreement made upon a guilty plea. In the instant case, the trial court denied appellant's motion to dismiss insofar as it was based upon a failure of the detective to carry out his agreement. The court said that the agreement was made upon certain conditions that were not complied with. Although the court said it would leave open the issue of police misconduct, no other evidence in that respect was offered and none is argued. We find no error in the court's refusal to grant appellant's motion to dismiss that was based on appellant's contention that Detective Stephens failed to keep his agreement.

Finally, appellant argues the trial court erred in denying her motion for a new trial alleging that the jury verdict was based upon a compromise and that newly discovered evidence necessitated the granting of a new trial.

At trial, after the jury returned its verdict, defense counsel requested that the jury be polled. During the poll one of the jurors stated the verdict was a "compromise" of the jury. Appellant cites *Rogers* v. *State*, 257 Ark. 13, 513 S.W.2d 908 (1974), and complains because the juror was not questioned as to her definition of "compromise." Appellant contends it is reasonable to believe the juror's statement was the equivalent of stating the verdict had been arrived at by "lot." We do not agree.

In the first place, appellant cannot predicate error upon the failure of the trial court to take action the appellant did not ask it to take. Appellant does not direct us to any place in the record where she asked the trial court to question this juror about the juror's definition of "compromise." Indeed, the juror actually said "this whole thing was a compromised thing, so does that mean if we agreed to the compromise that we agreed to that verdict?" The trial judge answered by stating that each member should state his or her name and say "yes" or "no" as to whether the verdict signed by the foreman and read by the court was the individual juror's verdict. Each of the members of the jury then stated his or her name and said "yes." So, the juror who asked if agreeing to the compromise meant agreeing to the verdict clearly stated that the verdict read by the judge and signed by the foreman of the jury was her own verdict.

■ Appellant then argues that Ark. Code Ann. § 16-64-119 (1987) provides that if any juror disagrees with the verdict the jury must be returned to the jury room again because, even though the juror here agreed that it was her verdict, sufficient question existed as to require the resequestering of the jury. Appellant cites *Rhodes* v. *State*, 290 Ark. 60, 716 S.W.2d 758 (1986), in support of this argument. In that case, at the conclusion of trial, appellant's counsel requested the jurors be polled. One juror, when asked whether it was his verdict, responded "[i]t is with a question." Upon further questioning by the court the juror responded he "wasn't sure either way"; then stated he "agreed to it after we discussed it"; and after being asked whether he was convinced beyond a reasonable doubt of the appellant's guilt, stated "I'm sure." The court reversed appellant's conviction on the basis that when a juror casts doubt on whether the verdict is his verdict and the court questions the juror until he casts an unequivocal vote, the juror is voting in the courtroom rather than in the jury room.

■ However, we do not agree that the juror in the instant case was "voting in the courtroom." When the jury was polled each juror save this one stated it was his or her verdict. This one juror, Ms. Tanner, originally responded "no" and then the following exchange took place:

ANOTHER JUROR: Did you agree with that?

MS. TANNER: Oh, I agree that it was a unanimous thing yeah.

ANOTHER JUROR: That's what they want to know.

MS. TANNER: This jargon is [inaudible].

[THE COURT]: Okay, I'm sorry. It's a —

MS. TANNER: It was a unanimous thing that we turned in. I don't understand why we are having a poll.

[THE COURT]: It's a legal right that is available and the defense attorney requested that each juror individually state whether or not this was their verdict.

MS. TANNER: Okay. Yes.

Thus, it appears that Ms. Tanner had voted for the verdict, that

she agreed it was a unanimous verdict, and merely did not "understand why we are having a poll." We find that the trial court did not err in denying appellant's motion for a new trial as urged by appellant.

■ Neither do we agree with appellant's contention that there was newly discovered evidence which necessitated the granting of a new trial. On the day after appellant's trial, a sentencing hearing was held at which John Mosley appeared. The appellant had testified that Mosley was renting the house where the drugs were found and that she had been living with him. She said she put the phone and electric bill in her name because he owed her money. She testified she moved out in July and was not living there in August when the house was searched but admitted she had not moved her things out when the officers came to search the house, and that she was also there that day. Mosley testified on the motion for new trial, that he knew appellant had a trial "yesterday"; That he was in town; that appellant and her attorney had asked him to come to court; and that he had refused. However, the record does not show that Mr. Mosley was subpoenaed for trial even though appellant knew that his testimony could be helpful. Therefore, appellant cannot very well claim that Mosley's testimony was "newly discovered" evidence. The decision of whether to grant a new trial is left to the sound discretion of the trial judge; his decision will not be disturbed absent abuse of that discretion; and newly discovered evidence is one of the least favored grounds for a new trial. *Vasquez* v. *State*, 287 Ark. 468, 701 S.W.2d 357 (1985). We find no error in the denial of a new trial.

Affirmed.

COOPER and ROGERS, JJ., agree.