**FILED**
**June 17, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0171 – *C.C. and J.C., as next friends of the minor child M.C., v. Harrison County Board of Education*

Justice Hutchison, concurring, in part, and dissenting, in part:

I concur with the bulk of the majority's opinion. The petitioners pled, in five of the eight counts of their complaint, that the Harrison County Board of Education ("the Board") committed intentional torts. As the majority opinion notes, the Board is statutorily immune for actions alleging intentional torts, so the petitioners effectively pleaded themselves out of a case on these five counts.[1] And, to boot, when the petitioners argued their case to this Court, they waived pursuing all but two of the eight counts: Count 5, negligence per se; and Count 6, negligent hiring, supervision, and retention. I concur with the majority opinion's decision to reinstate, in part, Count 5 of the complaint. I also agree with the majority opinion's reasoning that the petitioners may pursue their allegation in Count 6 that the Board negligently retained the school's Assistant Principal. However, the petitioners failed to plead any facts under Count 6 suggesting that the Board was negligent in its decision to hire the Assistant Principal, and while normally such a general claim should be refined or weeded out of a case by way of summary judgment, in this case I agree

---

[1] *But see Brooks v. City of Weirton*, 202 W. Va. 246, 257, 503 S.E.2d 814, 825 (1998) (While a litigant may be barred by the Governmental Tort Claims and Insurance Reform Act from suing the political subdivision, the litigant's "naming an employee of a political subdivision as a defendant for purposes of establishing the employee's liability—as opposed to the subdivision's liability—would not be barred, if one of the statutory exceptions to employee immunity in W.Va. Code, 29-12A-5(b) [1986] is present.")

1

with the majority opinion that any cause of action for negligent hiring was properly dismissed.

My concern centers on the majority opinion's discussion regarding whether the petitioners alleged an actionable claim for negligent supervision under Count 6. The majority opinion concludes that petitioners' complaint "is factually deficient in stating a claim for negligent supervision because the complaint does not set forth factual allegations" and, therefore, "does not provide sufficient notice to the Board of the nature of the negligent supervision claim alleged against it[.]" As the complaint is drafted, I am not going to quibble with this conclusion by the majority opinion.

I strenuously dissent, however, to the majority opinion's discussion of the law regarding a negligent supervision claim. Instead of stopping its discussion after applying Rule 12(b)(6) and stating that the petitioners' complaint factually failed to state a claim, the majority decided to go one step further and prop up its determination with quotes from the circuit court's pronouncement of the law regarding a negligent supervision claim. That discussion of the law is a house of cards destined to fall. Therefore, I warn lawyers not to rely upon the majority's legal discussion because it has little precedential value beyond the unique facts of this case.

First and foremost, the majority opinion cites absolutely *no* persuasive, controlling West Virginia law to support its discussion of the law of negligent supervision. The majority fails to quote any case from this Court outlining the elements of a cause of

action for negligent supervision for an obvious and very important reason: because none exists. In fact, the majority opinion admits that "our body of caselaw concerning negligent supervision is sparse[.]"

Despite this dearth of any real precedent, the majority opinion plows ahead and quotes the circuit court's statement of what it thought the law is. Specifically, the circuit court pronounced that a "negligent supervision claim prevails when the party shows that the employer failed to supervise its employee, and as a result, *the employee committed a negligent act and caused injury*." As "authority" for this pronouncement, the circuit court cited a *per curiam* decision from this Court, *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W. Va. 128, 538 S.E.2d 719 (2000), and an unpublished opinion from a federal district court that cites *Taylor*.[2] *Per curiam* and unpublished federal cases carry almost no persuasive weight. Nevertheless, the majority opinion doubles down on its reliance upon the circuit court's pronouncement and declares that the circuit court's interpretation of *Taylor* is "our *current* definition" and "*current* construction of a negligent supervision cause of action[.]" (Emphasis added).

However, nowhere in *Taylor* did the Court outline or construe the elements of a negligent supervision cause of action. To the contrary, in *Taylor*, the Court expressly *refused* to define that cause of action.

---

[2] *See Carroll v. USAA Sav. Bank*, No. CV 3:16-11120, 2017 WL 811491 (S.D.W. Va. Mar. 1, 2017).

3

*Taylor* involved a plaintiff injured in a hospital emergency room. That plaintiff pursued a *respondeat superior* theory against the hospital alleging that a nurse, as an agent of the hospital, had been negligent. However, the jury concluded that the plaintiff's "injury was not caused by . . . [the nurse's] negligence." *Id.*, 208 W. Va. at 132, 538 S.E.2d at 723. On appeal, the plaintiff argued that she should have been permitted to pursue a claim that the hospital had negligently supervised the nurse. We expressed confusion as to why the plaintiff wanted to pursue a negligent supervision claim when the hospital admitted it would be vicariously liable under the doctrine of *respondeat superior* if the nurse's negligence had been found to have caused the plaintiff's injury. *Id.* at 134, 538 S.E.2d at 725. Moreover, we concluded that, "[b]ecause of the verdict in this case" in favor of the nurse, "we need not consider the viability of a negligent supervision claim in cases governed by the doctrine of *respondeat superior*." *Id.* Accordingly, we found "the issue of alleged negligent supervision to be moot." *Id.*

In this case, the problem with the circuit court's pronouncement, and the majority opinion's problematic adoption of the pronouncement, arises from two stray sentences in *dicta* in *Taylor*. After specifically saying we were not going to discuss the substance of a negligent supervision claim, we went on to say that even if the plaintiff in *Taylor* were permitted to pursue such a claim, she could never prove that the hospital breached any duty to supervise the emergency room nurse because of the absence of "a showing of negligence" by the nurse. The two offending stray sentences provide:

> The appellant's claim of negligent supervision must rest upon
> a showing that the hospital failed to properly supervise Nurse

4

> Grim and, as a result, Nurse Grim committed a negligent act which proximately caused the appellant's injury. . . . While the appellant may be able to show that the hospital breached its duty to supervise Nurse Grim, absent a showing of negligence by Nurse Grim, the appellant is unable to show that the hospital's negligence proximately caused her injury.

*Id.*

Stated succinctly, nowhere in *Taylor* did this Court define the elements of a cause of action for negligent supervision. In fact, in that case, the Court specifically avoided establishing the boundaries for such an action. Instead, *Taylor* contains language cabined by the facts of the case, and those facts plainly involved a negligent employee. Nowhere in *Taylor* did the Court explain how a negligent supervision claim should apply to employees who are reckless or who act with intent. Further, I have found no case from this Court that definitively explains the elements of such an action. It was, therefore, disingenuous and misleading for the majority opinion to base its conclusion in any way upon the circuit court's reading of *dicta* in the *per curiam* opinion in *Taylor*.

Second, when *Taylor* was issued as a *per curiam* opinion in July of 2000, the policy of this Court was to treat "everything in a *per curiam* opinion beyond the syllabus point [as] merely *obiter dicta*." *Lieving v. Hadley*, 188 W. Va. 197, 201 n.4, 423 S.E.2d 600, 604 n.4 (1992). The Court's policy was to use *per curiam* opinions to "decide only the specific case before the Court" and, therefore, considered those opinions in the same way the federal appellate courts treated unpublished opinions: as opinions that could not be cited as authority. *Id.* In those days, this Court also routinely said that a "*per curiam*

5

opinion that appears to deviate from generally accepted rules of law is not binding on the circuit courts, and should be relied upon only with great caution." *Id.* When *Taylor* was being drafted and considered in July of 2000, it was this Court's mantra that "if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion." *Id.*

However, in October of 2001, this Court abrogated the rule expressed in *Lieving* in *Walker v. Doe*, 210 W. Va. 490, 558 S.E.2d 290 (2001). In *Walker*, we recognized that a *per curiam* opinion did have some precedential effect because it could be used to show application of a settled principle of law to different facts, or to show that "previously announced principles of law remain valid." *Id.* at 496, 558 S.E.2d at 296. But the fact remains, when the Court heard oral arguments in *Taylor*, considered the parties' briefs, drafted the language used in the *Taylor* opinion, and finally voted to issue *Taylor* as a *per curiam* opinion, the guiding rule in the back of every justice's mind was that there was nothing in *Taylor* about negligent supervision that was precedential.[3] Everything in *Taylor* beyond the cited syllabus points was to be considered *dicta*. Yet, here we are two

---

[3] Additionally, the fact that no justice "signed" the opinion and put his or her name on the cover further dictates that there is no new explication of legal principles in the opinion. The rule of this Court is that we "will use signed opinions when new points of law are announced and those points will be articulated through syllabus points as required by our state constitution." Syl. pt. 2, *Walker v. Doe*, 210 W. Va. at 491, 558 S.E.2d at 29. *See also*, Syl. pt. 1, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014) ("Signed opinions containing original syllabus points have the highest precedential value because the Court uses original syllabus points to announce new points of law or to change established patterns of practice by the Court.").

decades later, and the circuit court and the majority opinion are interpreting two stray sentences in *Taylor* as the law of the land.

Hence, I repeat my earlier warning: the majority's discussion – founded upon *dicta* in an opinion that this Court thought would never be cited as authority – has little precedential value beyond the unique facts of this case.

Third, the circuit court in this case also padded its interpretation by citing an unpublished decision by a federal judge. Problematically, the majority opinion also relies upon the unpublished opinion and then cites as support, in a footnote, a handful of other unpublished federal district court cases to bolster the circuit court's faulty conclusion. The majority opinion does so without noting that the federal judges were (1) simply "guessing" about the true status of West Virginia's law on negligent supervision, and (2) did not cite any law beyond the two sentences of *dicta* in *Taylor*.[4]

---

[4] At the same time that the majority opinion cites nine federal district court cases with outcomes similar to the circuit court's pronouncement, it also notes – without comment – four other cases where federal judges interpreted West Virginia's negligent supervision law in a manner directly contrary to the majority's "current" construction of the law. In these cases, the federal courts permitted plaintiffs to pursue negligent supervision claims against employers after employees engaged in an intentional tort. *See Proctor v. King*, No. 2:19-CV-00432, 2021 WL 2169515, at *1 (S.D.W. Va. May 27, 2021) (permitting plaintiff to pursue negligent supervision claim against a county commission after a county sheriff's deputy used excessive force); *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 818 (S.D.W. Va. 2012) (permitting plaintiffs to pursue negligent supervision claim against a debt collector after employees made excessive number of telephone calls to plaintiffs, even after being advised plaintiffs were represented by counsel); *Woods v. Town of Danville, W.V.*, 712 F. Supp. 2d 502, 514 (S.D.W. Va. 2010) (permitting plaintiff to pursue negligent supervision claim against a municipality after a city police officer used excessive force); *Hager v. Robinson*, No. CV 2:03-0094, 2005 WL

7

More importantly, this Court has often said that federal case law "may be persuasive, but it is not binding or controlling" on the courts of this State. *Brooks v. Isinghood*, 213 W. Va. 675, 682, 584 S.E.2d 531, 538 (2003). While this Court must certainly give deference to federal court interpretations of federal law, that does not mean our interpretation of our State's common law "should amount to nothing more than Pavlovian responses to federal decisional law." *Stone v. St. Joseph's Hosp. of Parkersburg*, 208 W. Va. 91, 112, 538 S.E.2d 389, 410 (2000) (McGraw, J., concurring, in part, and dissenting, in part).

Fourth, the circuit court, and by extension the majority opinion, seems to say that the *current* law in West Virginia is that a negligent supervision claim can only be based on the negligent acts of an employee; thus, if the employee engages in an intentional or reckless tort, then the employer is immune. This assessment of the common law claim for negligent supervision is completely wrong. In general, under a theory of *respondeat superior*, an employer may not be held liable for the intentional or reckless acts of its employee when that employee is acting outside the scope of his or her employment; however, the same is *not* true when liability is based upon negligent supervision. Under the common-law theory of negligent supervision, the acts and omissions of the employer serve as the basis for liability. Stated differently, if an employer has a duty to appropriately

8159176, at *11 (S.D.W. Va. Feb. 1, 2005) (permitting inmate to pursue negligent supervision claim against jail authority after prison guards sexually abused and harassed inmate).

8

supervise an employee to prevent harm to others, and the employer negligently fails in that duty, then the employer may be liable for the ensuing damages regardless of the nature of the employee's conduct, be it negligent, reckless, or intentional.

To begin, "[i]n a claim for negligent supervision it is the employer's wrongful act rather than the employee's wrongful act that is at issue." *Rasgaitis v. Waterstone Fin. Grp., Inc.*, 985 N.E.2d 621, 637 (Ill. App. 2013). The focus is upon whether the employer owed a duty of care to the plaintiff and breached that duty by allowing an employee to engage in negligent, reckless, or intentional tortious conduct. "Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 648 (S.D. Tex. 2016). As I discuss below, case after case across this country, and treatise after treatise, have found that an employee's tortious conduct that causes harm to a plaintiff, whatever the form, can form the basis for an employer's liability for negligent supervision.

At this point, I feel I should remind practitioners of the meaning of a "tort." "The term 'tort' embraces all civil wrongs for which damages may be recovered." Barry A. Lindahl, 1 Modern Tort Law: Liability and Litigation § 2:1 (2d ed. 2021).[5] Tortious

---

[5] *Black's Law Dictionary* gives a more expansive definition of the term "tort":

> A civil wrong, other than breach of contract, for which a
> remedy may be obtained, usu. in the form of damages; a breach
> of a duty that the law imposes on persons who stand in a

9

conduct is not limited to negligent acts alone. A "tort" involves any form of injury or wrong inflicted upon the person or property of another "by either the non-feasance, malfeasance, or misfeasance of the wrong-doer." *Gindele v. Corrigan*, 129 Ill. 582, 587, 22 N.E. 516, 517 (Ill. 1889). Clearly then, tortious conduct includes acts that are negligent, reckless, or intentional. In this case, petitioners allege the Assistant Principal's tortious conduct was intentional.

The drafters of the *Restatement (Second) of Agency* stated that a negligent supervision claim against an employer is based solely upon the employer's negligence, without regard to whether the employee's injury-causing acts were negligent, reckless, or intentional. The drafters provided:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders [or] in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:

---

> particular relation to one another • Tortious conduct is typically one of four types: (1) *a culpable or intentional act resulting in harm*; (2) an act involving culpable and unlawful conduct causing unintentional harm; (3) a culpable act of inadvertence involving an unreasonable risk of harm; and (4) a nonculpable act resulting in accidental harm for which, because of the hazards involved, the law imposes strict or absolute liability despite the absence of fault.

(Emphasis added).

10

(c) *in the supervision of the activity*; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

*Restatement (Second) of Agency* § 213 (1957) (emphasis added). When assessing whether an employer was liable for negligent supervision of an activity, the drafters saw the cause of action encompassing negligent, reckless, and intentional torts by employees. The drafters stated that the act of supervision by an employer must weigh the "dangerous quality" of an employee including "his incompetence or unskillfulness" but also "his reckless or vicious disposition[.]" *Id.* at cmt. d.

Similarly, the drafters of the *Restatement (Second) of Torts* concluded that liability for negligent supervision arises when the employer permits an employee to act "outside the scope of his employment" and causes injury to another. Remember, for a master to be vicariously liable for the acts of a servant under the doctrine of *respondeat superior*, the servant must be acting within the scope of his or her duties on behalf of the master. *See, e.g.*, *Roof Serv. of Bridgeport, Inc. v. Trent*, 854 S.E.2d 302, 306 (W. Va. 2020).[6] The drafters of the *Restatement* sought to explain circumstances where an

---

[6] In Syllabus Point 3 of *Musgrove v. Hickory Inn, Inc.*, 168 W. Va. 65, 281 S.E.2d 499 (1981), we offered the following rule for *respondeat superior*:

An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of

11

employer could be liable when *respondeat superior* did not apply, and concluded that the common law provides a cause of action for an employer who negligently fails to control an employee who is acting outside the scope of employment:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
> (ii) is using a chattel of the master, and
>
> (b) the master
>
> (i) knows or has reason to know that he has the ability to control his servant, and
>
> (ii) knows or should know of the necessity and opportunity for exercising such control.

---

> course, if he is acting within the scope of his employment, then his principal or employer may also be held liable.
>
> We offered a different iteration of this rule in *Griffith v. George Transfer & Rigging, Inc.*, 157 W. Va. 316, 324-25, 201 S.E.2d 281, 287 (1973), where we said:
>
> The universally recognized rule is that an employer is liable to a third person for any injury to his person or his property which results proximately from tortious conduct of an employee acting within the scope of his employment. The negligent or tortious act may be imputed to the employer if the act of the employee was done in accordance with the expressed or implied authority of the employer.

12

*Restatement (Second) of Torts* § 317 (1965).[7]  The gist of this rule is that an employer "is required to police his own premises . . . to the extent of using reasonable care to exercise his authority as a master in order to prevent his servant from doing harm to others."  *Id.* cmt b.  As the Washington Supreme Court said, "the scope of employment limits the employer's vicarious liability.  However, the scope of employment is not a limit on an employer's liability for a breach of its own duty of care."  *Niece v. Elmview Grp. Home*, 929 P.2d 420, 426 (Wash. 1997).  The Washington court went on to say,

> Even where an employee is acting outside the scope of employment, the relationship between employer and employee gives rise to a limited duty, owed by an employer to foreseeable victims, to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others.  This duty gives rise to causes of action for negligent hiring, retention and supervision.  Liability under these theories is analytically distinct and separate from vicarious liability.  These causes of action are based on the theory that such negligence on the part of the employer is a wrong to the injured party, entirely independent of the liability of the employer under the doctrine of respondeat superior.

*Id.*  (Cleaned up).

---

[7] This Court cited to Section 317 as support for our holding in *Robertson v. LeMaster*, 171 W. Va. 607, 611, 301 S.E.2d 563, 567 (1983), where we concluded that an employer could be held liable for sending an employee, who had worked twenty-seven straight hours, driving onto the highway where he struck and injured another motorist.  We found that an employer "who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm."  Syl. pt. 2, 171 W. Va. at 608, 301 S.E.2d at 564.

If there is any question about whether the drafters of the *Restatement* believed the tort of negligent supervision applied to intentional acts by an employee, the drafters' comments removed all doubt. For example, the comments to Section 317 specifically note that the rule is intended to be applied to employees engaging in intentional torts and give the following example of employees committing an intentional tort who, if not disciplined or discharged, would subject an employer to liability for negligent supervision:

> Thus a railroad company which knows that the crews of its coal trains are in the habit of throwing coal from the cars as they pass along tracks laid through a city street, to the danger of travelers, is subject to liability if it retains the delinquents in its employment, although it has promulgated rules strictly forbidding such practices.

*Restatement (Second) of Torts* § 317, cmt. c.

Courts examining the elements of the negligent supervision cause of action have repeatedly concluded that "[a]n employer may be liable for negligent supervision if the employee intentionally harms another[.]" *Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992). For instance, when a plaintiff alleged that a church's hierarchy negligently failed to supervise and prevent intentional and deliberate sexual molestation by priests, the church-employer faced liability for negligent supervision. *Smith v. O'Connell*, 986 F. Supp. 73, 81 (D.R.I. 1997) ("Rhode Island law recognizes that an employer may be liable for the misconduct of an employee attributable to the employer's negligent failure to supervise the employee."); *Doe v. Bishop of Charleston*, 754 S.E.2d 494, 500 (S.C. 2014) ("An employer may be liable for negligent supervision when (1) his employee intentionally harms another when he is on the employer's premises, is on

14

premises he is privileged to enter only as employee, or is using the employer's chattel; (2) the employer knows or has reason to know he has the ability to control the employee; and (3) the employer knows or has reason to know of the necessity and opportunity to exercise such control."); *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 522 (W.D. Tex. 2020) ("An employer who negligently hires, retains, or supervises an incompetent or unfit individual may be directly liable to a third party whose injury was proximately caused by the employee's negligent or intentional act." (quoting *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 495 (Tex. App. 2002))). Another court found an employer could be liable for negligent supervision for permitting male employees to sexually harass their fellow female employees. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 249-50 (4th Cir. 2000) ("In North Carolina, a plaintiff must prove two elements to hold an employer liable for negligent supervision or retention: (1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency."). Likewise, school systems may be held liable for failing to supervise employees who sexually abuse students. *See C.A. v. William S. Hart Union High Sch. Dist.*, 270 P.3d 699, 704-05 (Cal. 2012) ("[T]he duty of care owed by school personnel includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally. This principle has been applied in cases of employees' alleged negligence resulting in injury to a student by another student, injury to a student by a nonstudent, and . . . injuries to a student resulting from a teacher's sexual assault.").

Intentional violence by an employee has often subjected an employer to liability for negligent supervision. In one such case, a federal district court in West Virginia considered an action brought against a municipality after a police officer allegedly used excessive force and committed numerous intentional torts against a teenager, including false arrest, assault, battery, and the tort of outrage. The district court found the municipality could be liable for negligent supervision when it allowed the poorly trained police officer to work alone when he had been on the job for only eight days. *Woods v. Town of Danville, W.V.*, 712 F. Supp. 2d 502, 515 (S.D.W. Va. 2010) ("Under West Virginia law, negligent supervision claims must rest upon a showing that [the employer] failed to properly supervise [the employee] and, as a result, [the employee] proximately caused injury to the plaintiffs."). In another case, an employer was found liable for negligent supervision when a supervisor stood by and allowed one employee to berate, and then batter, a fellow employee. *Shanks v. Walker*, 116 F. Supp. 2d 311, 314 (D. Conn. 2000) ("A plaintiff may sue for negligent supervision of employees. . . . Plaintiff must allege that she suffered injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise."). In *Kristie's Katering, Inc. v. Ameri*, 35 S.W.3d 807, 813 (Ark. App. 2000), a jury found the owner of a night club liable for negligent supervision when a customer was intentionally battered by the club's poorly trained, poorly supervised security guards. The Arkansas court concluded,

> Employers are subject to direct liability for the negligent hiring, retention, or supervision of their employees when third parties are injured by the tortious acts of such unfit, incompetent, or unsuitable employees. In order to recover, the plaintiff must show that the employer knew, or in the exercise

16

of ordinary care should have known, that its employee's conduct would subject third parties to an unreasonable risk of harm.

This theory is completely separate from the respondeat superior theory of vicarious liability because the cause of action is premised on the wrongful conduct of the employer, such that the employer's negligence was the proximate cause of the plaintiff's injuries.

Some courts offer general outlines of the elements of the negligent supervision cause of action. For instance,

In the District of Columbia, liability under a theory of negligent supervision arises when an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee. To succeed on a claim of negligent supervision, the plaintiff must prove that the employer breached a duty to the plaintiff to use reasonable care in the supervision or retention of an employee which proximately caused harm to plaintiff.

*Flythe v. D.C.*, 994 F. Supp. 2d 50, 68-69 (D.D.C. 2013), rev'd in part on other grounds, 791 F.3d 13 (D.C. Cir. 2015) (cleaned up). *See also*, *Green v. MOBIS Alabama, LLC*, 995 F. Supp. 2d 1285, 1309 (M.D. Ala. 2014) (Under Alabama law, "An employer is liable for negligent supervision if the employer has actual or constructive notice of his employee's incompetency. A plaintiff must show that the employer would have discovered the employee's incompetency through the exercise of proper diligence."); *Mandy v. Minnesota Min. & Mfg.*, 940 F. Supp. 1463, 1471 (D. Minn. 1996) (Under Minnesota law, the tort of negligent supervision "is directed at an employer's duty to control his or her employee's physical conduct . . . even when the employee is acting outside the scope of the

17

employment, in order to prevent intentional or negligent infliction of personal injury. . . . The duty imposed is unambiguously limited to preventing an employee from inflicting personal injury upon a third person on the master's premises or inflicting bodily harm by use of the employer's chattels.").

Other courts have defined negligent supervision using a multi-factor test. For example, the courts of Ohio have found:

> The elements of negligent supervision are: 1) an employment relationship, 2) incompetence of the employee, 3) actual or constructive knowledge of the incompetence by the employer, 4) an act or omission by the employee which caused the plaintiff's injuries, and 5) negligent retention of the employee by the employer, which action is the proximate cause of the plaintiff's injuries.

*Cook v. Kudlacz*, 974 N.E.2d 706, 724 (Ohio 2012). *See also*, *Williams v. Wicomico Cty. Bd. of Educ.*, 836 F. Supp. 2d 387, 400 (D. Md. 2011) (discussing a similar five-factor test for "negligent training and supervision" under Maryland law); *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 680 (Iowa 2004) ("To prevail on a claim of negligent supervision, the plaintiff must show: (1) the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time the employee engaged in wrongful or tortious conduct; (2) through the negligent . . . supervision of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused injuries to the plaintiff; and (3) there is some employment or agency relationship between the employee and the defendant employer."); *Mullen v. Topper's Salon & Health Spa, Inc.*, 99 F. Supp. 2d 553, 556 (E.D. Pa. 2000) ("[U]nder Pennsylvania law, an employer may be

18

liable for negligent supervision of an employee where the employer fails to exercise ordinary care to prevent an intentional harm to a third-party which 1) is committed on the employer's premises by an employee acting outside the scope of his employment and 2) is reasonably foreseeable.").[8]

The rule to take away from these numerous cases and authorities is that a plaintiff pleads a claim upon which relief can be granted when he or she alleges that an employer negligently supervised an employee who engaged in reckless or intentional conduct that harmed the plaintiff. The case law is unanimous that *any* tortious conduct by an employee can support a negligent supervision claim.

In summary, I find no fault with the majority opinion's assessment that the allegation of negligent supervision in petitioners' complaint failed to provide any notice to

---

[8] There are a host of treatises that outline a negligent supervision claim, and often lump negligent hiring, supervision, training and/or retention claims into one. *See*, *e.g.*, Louis A. Lehr, Jr., "The tort of negligent hiring," 1 Premises Liability 3d § 2:5 (2020 ed.); W. Cole Durham and Robert Smith, "Negligent hiring, supervision, and retention," 2 Religious Organizations and the Law § 21:8 (2020); Anne M. Payne, "Personal Liability of Public School Principal for Injury or Damage to Student by School District Employee Under Principal's Supervision," 114 Am. Jur. Trials 349 (2009); Kristine Cordier Karnezis, "Cause of Action for Injury or Death Resulting from Negligent Hiring, Supervision, or Retention of Employee," 25 Causes of Action 2d 99 (2004); Brian H. Alligood, "Proof of Employer Negligence in Hiring and Supervision of Employee with Propensity Toward Workplace Sexual Harassment," 56 Am. Jur. Proof of Facts 3d 1 (2000); Timothy P. Glynn, "The Limited Viability of Negligent Supervision, Retention, Hiring, and Infliction of Emotional Distress Claims in Employment Discrimination Cases in Minnesota," 24 Wm. Mitchell L. Rev. 581 (1998); Louis Buddy Yosha, Lance D. Cline, "Negligent Hiring and Retention of An Employee," 29 Am. Jur. Trials 267 (1982); and "Employment of incompetent, inexperienced, or negligent employee as independent ground of negligence toward one other than an employee," 8 A.L.R. 574 (1920).

the Board, and that dismissal under Rule 12(b)(6) was warranted. And this is a shame, because if the petitioners had just beefed up their complaint a tad, they probably could have proven that the Board knew, or in the exercise of ordinary care should have known, of the Assistant Principal's propensity to make loathsome comments toward students, and that the Board carelessly breached its responsibility to the petitioners to supervise, control, discipline, or dismiss the Assistant Principal and so allowed his incompetence, unfitness, or dangerous characteristics to proximately cause injuries to the petitioners.[9]

I respectfully dissent, however, to the majority opinion's discussion of the "current" law regarding the negligent supervision cause of action. The majority opinion has done a cruel disservice to West Virginia's common law by quoting the faulty interpretations of the law of negligent supervision by the circuit court and the federal courts, and it did so when it was patently unnecessary to the outcome of this case. By repeatedly employing the word "current," the majority suggests that it might address the

---

[9] I note, however, that if evidence of negligent supervision is later developed, the West Virginia Rules of Civil Procedure contemplate that the petitioners should be permitted by the circuit court to amend their complaint. Rule 15(b) permits amendments to a complaint at any time, even after the completion of a trial. Rule 15(b) also provides that

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

boundaries of a negligent supervision claim in detail in a future, better-presented case. However, in the meantime, the majority opinion has unintentionally given lawyers additional sentences of needless *dicta* to quote alongside the *dicta* from *Taylor*.